| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| Mark S. Martinez (SBN 293489)<br>Law Offices of Mark S. Martinez<br>600 W Santa Ana Blvd., Ste 925<br>Santa Ana, CA 92701<br>Telephone: 714-442-9741<br>Facsimile:  714-442-9742<br>email: mark@martinezlawcenter.com | |

☐ *Debtor appearing without attorney*
☒ *Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br><br>JUANA NAREDO ROMO<br><br><br><br><br>Debtor(s). | CASE NUMBER: 6:17-bk-14132-WJ<br>CHAPTER: 7<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) (REAL PROPERTY)**<br><br>[No hearing required unless requested under LBR 9013-1(o)] |
|---|---|
| **Creditor Name:**<br>SACOR FINANCIAL, INC. | |

**TO THE CREDITOR, ATTORNEY FOR CREDITOR AND OTHER INTERESTED PARTIES:**

1. **NOTICE IS HEREBY GIVEN** that Debtor moves this court for an order, pursuant to LBR 9013-1(o) upon notice of opportunity to request a hearing (*i.e.*, without a hearing unless requested), avoiding a lien on the grounds set forth below.

2. **Deadline for Opposition Papers:**
   Pursuant to LBR 9013-1(o), any party opposing the motion may file and serve a written opposition and request a hearing on this motion.  If you fail to file a written response within 14 days of the date of service of this notice of motion and motion, plus an additional 3 days unless this notice of motion and motion was served by personal delivery or posting as described in Federal Rules of Civil Procedure 5(b)(2)(A)-(B), the court may treat such failure as a waiver of your right to oppose this motion and may grant the requested relief.

---

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure.  "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3. **Type of Case:**

   a. ☒ A voluntary petition under Chapter    ☒ 7   ☐ 11   ☐ 12   ☐ 13 was filed on: *5-16-2017*

   b. ☐ An involuntary petition under Chapter   ☐ 7   ☐ 11 was filed on: _____

       ☐ An order of relief under Chapter     ☐ 7   ☐ 11 was entered on: _____

   c. ☐ An order of conversion to Chapter    ☐ 7   ☐ 11   ☐ 12   ☐ 13 was entered on: _____

   d. ☐ Other:

4. **Procedural Status:**

   a. ☒ Name of Trustee appointed (*if any*): *Karl T. Anderson*

   b. ☐ Name of Attorney for Trustee (*if any*): _____

5. Debtor claims an exemption in the subject real property under:

   a. ☒ California Code of Civil Procedure § 703.140(b)(1) _____ (Homestead): Exemption amount claimed on schedules: $ 24,060.00 _____

   b. ☐ California Code of Civil Procedure § _____ Exemption amount claimed on schedules: $ _____

   c. ☐ Other statute (*specify*): _____

6. Debtor's entitlement to an exemption is impaired by a judicial lien, the details of the lien are as follows:

   a. Date of entry of judgment (*specify*): 01/23/2006 _____
   b. Case name (*specify*): Columbia Credit Services, Inc. v. Juana Naredo, et al. _____
   c. Name of court: Superior Court, County of Riverside _____
   d. Docket number (*specify*): _____ RIC 439066 _____
   e. Date (*specify*): 04/05/2016 _____ and place (*specify*) County of Riverside _____
       of recordation of lien
   f. Recorder's instrument number (*specify*): 2016-0132707 _____

7. The property claimed to be exempt is as follows:

   a. Street address, city, county and state, where located, (*specify*):
       15160 Via Montana, Desert Hot Springs, CA 92240 _____

   b. Legal description (*specify*): LOT 755 TR #6 LOT 755 MB 030/068 DOS PALMAS TR UNIT 6 Tract in the City of Desert Hot Springs

       County of Riverside, State of California, as recorded in the Office of the County Recorder of said County    ☒ See attached page

8. Debtor acquired the property claimed as exempt on the following date (*specify*): 03-11-2016 _____

9. Debtor alleges that the fair market value of the property claimed exempt is: $ 175,000.00 _____

10. The subject property is encumbered with the following liens (*list mortgages and other liens in order of priority and place an "X" as to the lien to be avoided by this motion*):

| Name of Lienholder | "X" | Date Lien Recorded | Original Lien Amount | Current Lien Amount | Date of Current Lien |
|---|---|---|---|---|---|
| Pingora Loan Servicing, LLC | ☐ | 03/11/2016 | $ $155,628.00 | $ | |
| Sacor Financial, Inc. | ☒ | 04/05/2016 | $ 64,628.15 | $ Unknown | |
| Marisabel Pulcini | ☐ | 01/11/2018 | $ $30,000.00 | $ $30,000.00 | |
| | ☐ | | $ | $ | |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*       Page 2       **F 4003-2.1.AVOID.LIEN.RP.MOTION**

11. Debtor attaches copies of the following documents in support of the motion (as appropriate):

    a. ☒ Schedule C to bankruptcy petition listing all exemptions claimed by Debtor

    b. ☒ Appraisal of the property

    c. ☒ Documents showing current balance due as to the liens specified in paragraph 11 above

    d. ☒ Recorded Abstract of Judgment

    e. ☐ Recorded Declaration of Homestead (Homestead Exemption)

    f. ☐ Declaration(s)

    g. ☒ Other (specify):
       Declaration of Juana Naredo

12. Total number of attached pages of supporting documentation: _____

13. Debtor declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct [28 U.S.C. § 1746(1) and (2)].

WHEREFORE, Debtor requests that this court issue an order avoiding Creditor's lien in the form of the **Attachment** to this motion.

Executed on (date): 1-16-20

Signature of Debtor

Juana Naredo Romo
Printed name of Debtor

Date: 1-16-20

Signature of Attorney for Debtor

Mark S. Martinez
Printed name of Attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2017                Page 3                F 4003-2.1.AVOID.LIEN.RP.MOTION

# ATTACHMENT TO MOTION/ORDER
## (11 U.S.C. § 522(f): AVOIDANCE OF REAL PROPERTY JUDICIAL LIENS)

This court makes the following findings of fact and conclusions of law:

1. **Creditor Lienholder/Servicer:** SACOR FINANCIAL, INC.

2. **Subject Lien:** Date and place of recordation of lien (*specify*): April 5, 2016 Renewed Abstract of Judgment

   Recorder's instrument number or document recording number: 2016-0132707 .

3. **Collateral:** Street address, city, county and state, where located, legal description and/or map/book/page number, including county of recording:
   Exhibit 1, p. 1 .
   ☒ See attached page.

4. **Secured Claim Amount**

   | | | |
   |---|---|---|
   | a. Value of Collateral: ………………………………………………………………………… | $ | 170,000.00 |
   | b. Amounts of Senior Liens (reducing equity in the property to which the subject lien can attach): | | |
   | (1) First lien: ………………………………………………… ($ | 152,887.24 | ) |
   | (2) Second lien: ……………………………………………… ($ | 61,511.81 | ) |
   | (3) Third lien: ………………………………………………… ($ | 30,000.00 | ) |
   | (4) Additional senior liens (*attach list*): …………………… ($ | | ) |
   | c. Amount of Debtor's exemption(s): …………………………………… ($ | 24,060.00 | ) |
   | d. Subtotal: ……………………………………………………………………………… ($ | | 238,459.05 ) |
   | e. Secured Claim Amount (negative results should be listed as -$0-): $ | | 0.00 |

   Unless otherwise ordered, any allowed claim in excess of this Secured Claim Amount is to be treated as a nonpriority unsecured claim and is to be paid pro rata with all other nonpriority unsecured claims (in Chapter 13 cases, Class 5A of the Plan).

5. **Lien avoidance:** Debtor's request to avoid the Subject Lien is granted as follows. The fixing of the Subject Lien impairs an exemption to which Debtor would otherwise be entitled under 11 U.S.C. § 522(b). The Subject Lien is not a judicial lien that secures a debt of a kind that is specified in 11 U.S.C. § 523(a)(5) (domestic support obligations). The Subject Lien is void and unenforceable except to the extent of the Secured Claim Amount, if any, listed in paragraph 4.e. above.

   ☐ See attached page(s) for more liens/provisions.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2017                                   Page 4                              F 4003-2.1.AVOID.LIEN.RP.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Law Offices of Mark S. Martinez 600 W. Santa Ana Blvd. Suite 925 Santa Ana, CA 92701.

A true and correct copy of the foregoing document entitled: **DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 1/17/2020_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Lynda T. Bui and Brandon J. Iskander on behalf of Karl T. Anderson (TR)
lbui@shulmanbastian.com; biskander@shulmanbastian.com; 2edasie@gmail.com
H. Christopher Coburn on behalf of debtor Juana Naredo Romo hccoburn@gmail.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 1/17/2020_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
See Page 6 and 7

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 1/21/2020_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Wayne Johnson
U.S. Bankruptcy Court, Central
3420 Twelfth St. Suite 384/ Courtroom 304
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/17/2020 | Gabriela Leon | _Gabriela Leon_ |
|---|---|---|
| Date | Printed Name | Signature |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2017                                    Page 5                                    **F 4003-2.1.AVOID.LIEN.RP.MOTION**

**SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)
(Certified Mail required for service on a national bank.)

| 1st lienholder *(name and address)*<br>Pingora Loan Servicing, LLC<br>Agent for Service of Process<br>Michael P. Lau<br>1819 Wazee St. Second Floor<br>Denver, CO 80202 | Address from:<br>☐ Proof of claim  ☒ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | Delivery Method<br>☐ United States mail<br>☒ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| --- | --- | --- |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| 1st lienholder *(name)* and Servicing Agent *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____<br>_____ |

| 2nd lienholder *(name and address)*<br>Sacor Financial Inc.<br>Attorney of Record<br>Aldridge Pite, LLP<br>4375 Jutland Dr. Suite 200<br>San Diego, CA 92177-0935 | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☒ Other *(specify):*<br>Attorney of Record reflected on Court Website | Delivery Method<br>☐ United States mail<br>☒ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____ |
| --- | --- | --- |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____<br>_____ |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)* | Address from:<br>☐ Proof of claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other *(specify):* | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>Tracking # _____<br>☐ Overnight mail –<br>Tracking # _____<br>Carrier Name: _____<br>_____ |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2017                                      Page 6                          **F 4003-2.1.AVOID.LIEN.RP.MOTION**

| 3rd lienholder (name and address)<br>Marisabel Pulcini<br>241 S. Figueroa St. Suite 100<br>Los Angeles, CA 90012 | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☒ Other (specify):<br>Address listed on Deed of Trust | Delivery Method<br>☐ United States mail<br>☒ Certified mail –<br>    Tracking # _____<br>☐ Overnight mail –<br>    Tracking # _____<br>    Carrier Name: _____ |
| 3rd lienholder (name) and Agent for Service of Process (name and address) | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other (specify): | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>    Tracking # _____<br>☐ Overnight mail –<br>    Tracking # _____<br>    Carrier Name: _____ |
| 3rd lienholder (name) and Servicing Agent (name and address) | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other (specify): | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>    Tracking # _____<br>☐ Overnight mail –<br>    Tracking # _____<br>    Carrier Name: _____ |

| Alternative/additional address<br>(name and address) | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other (specify): | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>    Tracking # _____<br>☐ Overnight mail –<br>    Tracking # _____<br>    Carrier Name: _____ |
| Alternative/additional address<br>(name and address) | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other (specify): | Delivery Method<br>☐ United States mail<br>☐ Certified mail –<br>    Tracking # _____<br>☐ Overnight mail –<br>    Tracking # _____<br>    Carrier Name: _____ |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*                                    Page 7                          **F 4003-2.1.AVOID.LIEN.RP.MOTION**

Mark S. Martinez (SBN 293489)
Daniel Cabrera (SBN 320708)
Law Offices of Mark S. Martinez
600 w. Santa Ana Blvd. Suite 925
Santa Ana, CA 92701
(714) 442-9741 Phone
(714) 442-9742 Fax
mark@martinezlawcenter.com

Attorney for Debtor,
Juana Naredo Romo

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re : | CASE No: 6:17-bk-14132-WJ |
| | Chapter: 7 |
| JUANA NAREDO ROMO | **DEBTOR'S DECLARATION IN SUPPORT OF MOTION TO AVOID LIEN** |
| | DATE: |
| | TIME: |
| | COURTROOM: |
| | JUDGE: Hon. Wayne E. Johnson |

## DECLARATION OF JUANA NAREDO ROMO

I, Juana Naredo Romo, do declare the following, I am a resident of the County of Riverside, California. I am over the age of 18 years old. I am the debtor in this bankruptcy Chapter 7 case. This declaration is made under the penalty of perjury and if called as a witness I can and will testify to the following to be true:

On or around May 16, 2017 I caused to be filed a voluntary bankruptcy case.

**DEBTOR'S DECLARATION IN SUPPORT OF MOTION TO AVOID LIEN**

1

On or around August 28, 2017 this bankruptcy case was discharged.  One of the primary reasons why I filed and entered this Chapter 7 bankruptcy case was to deal with a judgment default that was unknowingly secured against me in 2006.   When I filed the bankruptcy my attorney told me that it would eliminate the debt and also remove it as a lien from any properties that I owned.    When I filed the original bankruptcy I elected the California "wild card" exemption and used a little over $2,050.00 of the total exemption, under this exemption there would be an additional $24,060.00 left under C.C.P. § 703.140(b)(1) (704.710).

On or around DATE I filed an application to reopen this bankruptcy which was granted and I filed an amended Schedule C as well.

On or around March 11, 2016 I caused to be purchased a home located at 15160 Via Montana, Desert Hot Springs, CA 92240 along with another individual named William Deloya, a single man, as joint tenants.  I have attached the grant deed to this declaration.   Attached as Exhibit 1.  In purchasing the home I secured a first lien in the amount of $155,628.00.  I have attached a deed of trust reflecting this first lien amount at the time of purchase.   Attached as Exhibit 2.  On or around April 5, 2016 a renewed abstract of judgment was recorded in the County of Riverside for this judgment default.   Attached as Exhibit 3.  On or around December 21, 2016 this property was then transferred via quitclaim to Rafael Andres Valenzuela via myself and Deloya the other joint tenant.  Attached as Exhibit 4.

The loan balance on the first lien is in the amount of $150,000.00.   I have

---

**DEBTOR'S DECLARATION IN SUPPORT OF MOTION TO AVOID LIEN**

2

attached proof of this loan balance to this declaration as Exhibit 5.   In addition, on

or around January 11, 2018 a third lien was recorded on property in the amount of

$30,000.00.  I have attached the deed of trust of this lien to this declaration.

Attached as Exhibit 6.

Additionally, at the time of filing the bankruptcy I estimate that the property

was worth $170,000.00.  I have attached an appraisal that was executed when I

purchased the property.  Attached as Exhibit 7.


Dated: January 6, 2020


By: _____
    Debtor, Juana Naredo Romo


**DEBTOR'S DECLARATION IN SUPPORT OF MOTION TO AVOID LIEN**

3

# EXHIBIT 1

Grant Deed recorded March 11, 2016

**DOC # 2016-0096869**
03/11/2016 02:46 PM Fees: $18.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**RECORDING REQUESTED BY:**
Orange Coast title

**AND WHEN RECORDED MAIL TO:**

Juana R. Naredo and William Celis Deloya
15160 Via Montana
Desert Hot Springs, CA 92240

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: SOPHIA #466

| Title Order No.: 210-1715481-02 | Escrow No.: 102958-ER |
|---|---|
| AP#: 656-102-028-4   *TRA 061*    **GRANT DEED** | |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $174.35**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[✓] Unincorporated area    ~~City~~ of Desert Hot Springs **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Ralph-Loren Chattels LLC, a California Limited Liability Company**

hereby GRANT(s) to: Juana R. Naredo, A Single Woman and William Deloya,
     A Single Man, as Joint Tenants.
the real property in the ~~City~~ *Area* of Desert Hot Springs, County of Riverside, State of California, described as:
Lot 755, as shown on that certain map entitled Dos Palmas Tract Unit # 6, which map was filed in the office of the
recorder of the County of Riverside, State of California in Book 30 of Maps, Pages 68 and 69.
**Also Known as:** 15160 Via Montana, Desert Hot Springs, CA 92240

Dated December 16, 2015

Ralph-Loren Chattels LLC, a California Limited Liability
Company

By: _____
Rafael Valenzuela, *manager*

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA
COUNTY OF San Bernardino
On February 12, 2016 before me, Maria G. Fierros    A Notary Public
personally appeared Rafael Valenzuela    who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.
WITNESS my hand and official seal.

MARIA G. FIERROS
Commission # 2018526
Notary Public - California
San Bernardino County
My Comm. Expires Apr 16, 2017

Signature _____ (Seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

Case 6:17-bk-14132-WJ    Doc 43    Filed 01/17/20    Entered 01/17/20 15:02:17    Desc
Branch :O25    User :RSOL        Main Document        Page 13 of 82

DOC #2016-0096869  Page 2 of 2

## CERTIFICATION

Under the provisions of Government Code 27361.7 I certify under the penalty that the following is a true copy of illegible wording found in the attached document:

Date: 3-11-16

Signature: Lisa Fowler

Print Name: Lisa Fowler

**RECORDING REQUESTED BY:**
Orange Coast title

**AND WHEN RECORDED MAIL TO:**

Juana R. Naredo and William Celis Deloya
15160 Via Montana
Desert Hot Springs, CA  92240

---

| Title Order No.: 210-1715481-02 | Escrow No.: 102958-ER |
| AP#: 656-102-028-4  TRA 061     GRANT DEED | |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $174.35**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    City of Desert Hot Springs AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Ralph-Loren Chattels LLC, a California Limited Liability Company**

hereby GRANT(s) to:  Juana R. Naredo, A Single Woman and William Deloya,
A Single Man, as Joint Tenants.

the real property in the City of Desert Hot Springs, County of Riverside, State of California, described as:
Lot 755, as shown on that certain map entitled Dos Palmas Tract Unit # 6, which map was filed in the office of the recorder of the County of Riverside, State of California in Book 30 of Maps, Pages 68 and 69.
**Also Known as:**  15160 Via Montana, Desert Hot Springs, CA  92240

Dated December 16, 2015

Ralph-Loren Chattels LLC, a California Limited Liability Company

By: Rafael Valenzuela, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF San Bernardino
On February 12, 2016 before me, Maria L. Fierros                                    A  Notary  Public
personally appeared Rafael Valenzuela                                    who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature                                    (Seal)

MARIA G. FIERROS
Commission # 2018526
Notary Public - California
San Bernardino County
My Comm. Expires Apr 16, 2017

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE:

# EXHIBIT 2

Deed of Trust for $155,628.00 Recorded March 11, 2016

**DOC # 2016-0096870**
03/11/2016 02:46 PM Fees: $57.00
Page 1 of 15
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

## ORANGE COAST TITLE CO.

Recording Requested By:
Brian Nguyen
*210 - 171S481-02*
Return To:
Universal American Mortgage Company,
Secondary Marketing Ops
15550 Lightwave Drive, Suite 200
Clearwater, FL 33760

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: SOPHIA #466

Prepared By:

Brian Nguyen
Universal American Mortgage Co.,
100 Spectrum Center Dr Ste 500
IRVINE, CALIFORNIA 92618

---

## Deed of Trust

---

State of California                      | FHA Case No.
*APN: 656 - 102 - 028 - 4*               | 048- 8804659- 703

MIN: 101202500094710127

THIS DEED OF TRUST ("Security Instrument") is made on **March 08, 2016**    . The Trustor is
**JUANA R. NAREDO, A SINGLE WOMAN AND WILLIAM DELOYA, A SINGLE MAN AS JOINT
TENANTS**

                                                                        , whose address is
**13739 PHYLLIS AVENUE, MORENO VALLEY, CA 92553**
("Borrower"). The trustee is    **Universal American Mortgage Company, LLC**
                                                                        ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**Universal American Mortgage Company of California, a California Corporation**

("Lender") is organized and existing under the laws of **California**
and has an address of **391 N. Main Street, Suite 200, Corona, CA 92800**

---

**0009471012**                          I001088                          **A9925**
FHA Deed of Trust with MERS-CA           D004N1CA.UFF                     FHA 4/96 Amended 11/07
Bankers Systems™ VMP ®                                                    VMP4N(CA) (1409)
Wolters Kluwer Financial Services                                        Page 1 of 11

Borrower owes Lender the principal sum of **One Hundred Fifty Five Thousand Six Hundred Twenty Eight and 00/100**                                                            Dollars
(U.S. $      **155,628.00**      ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **April 01, 2046**      . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **RIVERSIDE**                        County, California:
**Described according to exhibit 'A' attached hereto and made a part hereof**

**Parcel ID Number: 656-102-028-4**                                        which has the address of
**15160 VIA MONTANA**                                                            *(Street)*
**DESERT HOT SPRINGS**                              *(City)*, California **92240**      *(Zip Code)*
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**0009471012**                                        I001068                            **A9925**
FHA Deed of Trust with MERS-CA                        D004N2CA.UFF                    FHA 4/96 Amended 11/07
Bankers Systems™ VMP ®                                                            VMP4N(CA) (1409)
Wolters Kluwer Financial Services                                                        Page 2 of 11

Case 6:17-bk-14132-WJ   Doc 43   Filed 01/17/20   Entered 01/17/20 15:02:17   Desc
Branch :O25   User :RSOL
Main Document     Page 17 of 82

DOC #2016-0096870  Page 3 of 15

Borrower and Lender covenant and agree as follows:

**UNIFORM COVENANTS.**

1.  **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

    If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

    The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

    <u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    <u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    <u>Third</u>, to interest due under the Note;

    <u>Fourth</u>, to amortization of the principal of the Note; and

    <u>Fifth</u>, to late charges due under the Note.

**0009471012**
FHA Deed of Trust with MERS-CA
Bankers Systems ™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N3CA.UFF

**A9925**
FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 3 of 11

D004N3CA.UFF
I001068

Branch :O25   User :RSOL
Case 6:17-bk-14132-WJ   Doc 43   Filed 01/17/20   Entered 01/17/20 15:02:17   Desc
Main Document   Page 18 of 82

DOC #2016-0096870 Page 4 of 15

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal

**0009471012**                                                I001068                        **A9925**
FHA Deed of Trust with MERS-CA                                  D004N4CA.UFF                     FHA 4/96 Amended 11/07
Bankers Systems™ VMP ®                                                                           VMP4N(CA) (1409)
Wolters Kluwer Financial Services                                                                Page 4 of 11

shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

**0009471012**

FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N5CA.UFF

**A9925**

FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 5 of 11

Branch :O25 User :RSOL    Case 6:17-bk-14132-WJ   Doc 43   Filed 01/17/20   Entered 01/17/20 15:02:17   Desc
Main Document     Page 20 of 82

DOC #2016-0096870 Page 6 of 15

    (ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)**   **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)**   **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)**   **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.**   **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.**   **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.**   **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security

**0009471012**

FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N6CA.UFF

**A9925**

FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 6 of 11

Case 6:17-bk-14132-WJ    Doc 43    Filed 01/17/20    Entered 01/17/20 15:02:17    Desc
Branch :O25    User :RSOL                     Main Document        Page 21 of 82

DOC #201b-0096870  Page 7 of 15

Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

**0009471012**

FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

M01068
D004N7CA.UFF

**A9925**

FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 7 of 11

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

19. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

0009471012
FHA Deed of Trust with MERS-CA
Bankers Systems ™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N8CA.UFF

A9925
FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 8 of 11

Branch :O25    User :RSOL

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Beneficiary Statement.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing Beneficiary statement as provided by Section 2943 of the Civil Code of California.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider             ☐ Growing Equity Rider        ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider
☐ Non Owner Occupancy Rider      ☐ Adjustable Rate Rider
☐ Rehabilitation Rider

**0009471012**
FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N9CA.UFF

**A9925**
FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 9 of 11

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
JUANA R NAREDO                -Borrower

_____ (Seal)
WILLIAM DELOYA                -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

**0009471012**
FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N10CA.UFF

**A9925**
FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 10 of 11

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
ILIANA R NAREDO                          -Borrower

_____ (Seal)
WILLIAM DELOYA                           -Borrower

### CERTIFICATION

Under the provisions of Government Code 27361.7 I certify under the penalty that the following is a true copy of illegible wording found in the attached document:

Date: _____3-11-16_____

Signature: _____

Print Name: _____

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

0009471012
FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N10CA.UFF

A9925
FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 10 of 11

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**Acknowledgment**
State of _California_
County of _San Bernardino_
On _March 9, 2016_ , before me _Maria G. Fierros, Notary Public_
Notary Public, personally appeared **JUANA R NAREDO and WILLIAM DELOYA**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MARIA G. FIERROS
Commission # 2018526
Notary Public - California
San Bernardino County
My Comm. Expires Apr 16, 2017

_____
Notary Public

My commission expires: _April 16, 2016_

**Loan Origination Organization: Universal American Mortgage Company of California**
**NMLS ID: 252392**
**Loan Originator: Jacqueline Aguilera**
**NMLS ID: 1024764**
**0009471012**                          I001068                    **A9925**
                                         D004N11CA.UFF
FHA Deed of Trust with MERS-CA                              FHA 4/96 Amended 11/07
Bankers Systems™ VMP ®                                     VMP4N(CA) (1409)
Wolters Kluwer Financial Services                                 Page 11 of 11

Branch :O25   User :RSOL

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**Acknowledgment**

State of *California*

County of *San Bernardino*

On *March 9, 2016*   , before me *Maria G. Fierros, Notary Public*

Notary Public, personally appeared **JUANA R NAREDO and WILLIAM DELOYA**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
*Notary Public*

My commission expires: *April 16, 2016*

**CERTIFICATION**

Under the provisions of Government Code 27361.7 I certify under the penalty that the following is a true copy of illegible wording found in the attached document:

Date: *3-11-16*

Signature: _____

Print Name: *Liz Fowler*

**Loan Origination Organization: Universal American Mortgage Company of California**
**NMLS ID: 252392**
**Loan Originator: Jacqueline Aguilera**
**NMLS ID: 1024764**
**0009471012**

FHA Deed of Trust with MERS-CA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

I001068
D004N11CA.UFF

**A9925**

FHA 4/96 Amended 11/07
VMP4N(CA) (1409)
Page 11 of 11

DOC #2016-0096870 Page 14 of 15

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury
that the notary seal on the document to which this statement is attached reads as follows:

**Name of Notary:**  *Maria G. Fierros*

**Commission #:**  *2018526*

**Place of Execution:**  San Bernardino, CA

**Date Commission Expires:**  *4 – 16 – 17*

**Vender No:**  *N N A 1*

**Where Notary Bond was Filed:**  San Bernardino, CA

**Date:**  *3 – 11 – 16*

**Signature:**

**Print Name:**  Liz Fowler

Orange Coast Title Company of Southern California - IE

Order No. 210-1715481-02

## Exhibit "A"

Lot 755, as shown on that certain Map entitled Dos Palmas Tract Unit #6, which Map was filed in the Office of the Recorder of the County of Riverside, State of California in Book 30 of Maps, Pages 68 and 69.

# EXHIBIT 3

Abstract of Judgment April 5, 2016

RECORDING REQUESTED BY
JOSEPH W. SCALIA
STATE BAR NO. 72526
1911 DOUGLAS BLVD. #85-435
ROSEVILLE, CA 95661
(916) 773-3506
WHEN RECORDED MAIL TO

NAME  JOSEPH W. SCALIA

MAILING  1911 DOUGLAS BLVD. #85-435

ADDRESS  1911 DOUGLAS BLVD. #85-435

CITY, STATE  ROSEVILLE, CA

ZIP CODE  95661

**2016-0132707**
04/05/2016 09:00 AM Fee: $ 34.00
Page 1 of 4
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

289

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# T I T L E (S)

ABSTRACT OF JUDGEMENT

COLUMBIA CREDIT SERVICES, INC. VS. JUANA NAREDO, ET AL.

RIVERSIDE COUNTY SUPERIOR COURT CASE NO. RIC439066

LS-201

MAR 0 4 2016

EJ-001

DOC #2016-0132707 Page 2 of 4

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):* |
|---|
| After recording, return to:   826? |
| JOSEPH W. SCALIA, STATE BAR NO. ,72526, |
| JOSEPH W. SCALIA |
| 1911 DOUGLAS BLVD. #85-435 |
| ROSEVILLE, CA 95661 |
| TEL NO.: (916)773-3506  Fax NO. (optional): (916)773-3551 |
| E-MAIL ADDRESS *(Optional):* |
| ☒ ATTORNEY FOR   ☐ JUDGMENT CREDITOR   ☒ ASSIGNEE OF RECORD |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  RIVERSIDE
STREET ADDRESS:  4050 MAIN STREET
MAILING ADDRESS:  4050 MAIN STREET
CITY AND ZIP CODE:  RIVERSIDE, CA 92501-1963
BRANCH NAME:  CENTRAL

FOR RECORDER'S USE ONLY

PLAINTIFF: COLUMBIA CREDIT SERVICES, INC.

DEFENDANT: JUANA NAREDO; et al.

CASE NUMBER:
RIC439066

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**          ☐ Amended

FOR COURT USE ONLY

1. The  ☐ judgment creditor  ☒ assignee of record
   applies for an abstract of judgment and represents the following:
   a.  Judgment debtor's
           Name and last known address
   JUANA NAREDO (SEE ATTACHMENT)

   ATTY ONLY
   MORENO VALLEY CA 92553

   b.  Driver's license no. [last 4 digits] and state:        ☒ Unknown
   c.  Social security no. [last 4 digits]:2252               ☐ Unknown
   d.  Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address):*
       JUANA NAREDO (SEE ATTACHMENT)
       13739 PHYLLIS AVE
       MORENO VALLEY CA 92553

2. ☐ Information on additional judgment debtors is
      is shown on page 2.

3. Judgment creditor *(name and address):*
   SACOR FINANCIAL, INC.
   1911 DOUGLAS BLVD. #85-205
   ROSEVILLE, CA 95661
   Date: 2/22/16
                JOSEPH W. SCALIA
              (TYPE OR PRINT NAME)

4. ☐ Information on additional judgment creditors is
      shown on page 2.

5. ☒ Original abstract recorded in this county: RIVERSIDE
      a. Date: 08/28/2013
      b. Instrument No.: 2013042745

   _____
   (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 61511.81

7. All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on (date):  01/23/2006
   b.  Renewal entered on *(date):*  12/30/2015

9. ☐ This judgment is an installment judgment.

10. ☐ An  ☐ execution lien  ☐ attachment lien
       is endorsed on the judgment as follows:
       a.  Amount: $
       b.  In favor of *(name and address):*

[SEAL]

This abstract issued on *(date):*
MAR 0 8 2016

11. A stay of enforcement has
    a. ☒ not been ordered by the court.
    b. ☐ been ordered by the court effective until
          *(date):*

12. a. ☒ I certify that this is a true and correct abstract of
         the judgment entered in this action.
    b. ☐ A certified copy of the judgment is at
                                                  L. VILLANUEVA
       Clerk, by _____ , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190

RIVERSIDE, CA  Document:AJ 2016.132707

Page:2 of 4

| PLAINTIFF: COLUMBIA CREDIT SERVICES, INC. | COURT CASE NO.: |
|---|---|
| DEFENDANT: JUANA NAREDO; et al. | RIC439066 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*    14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.    Name and last known address    17.    Name and last known address

Driver's license no. [last 4 digits] and state:  ☐ Unknown    Driver's license no. [last 4 digits] and state:  ☐ Unknown

Social security no. [last 4 digits]:  ☐ Unknown    Social security no. [last 4 digits]:  ☐ Unknown

Summons was personally served at or mailed to *(address):*    Summons was personally served at or mailed to *(address):*

18.    Name and last known address    19.    Name and last known address

Driver's license no. [last 4 digits] and state:  ☐ Unknown    Driver's license no. [last 4 digits]  and state:  ☐ Unknown

Social security no. [last 4 digits]:  ☐ Unknown    Social security no. [last 4 digits]:  ☐ Unknown

Summons was personally served at or mailed to *(address):*    Summons was personally served at or mailed to *(address):*

20.  ☐  Continued on Attachment 20.

EJ-001 [Rev. July 1, 2014]    **ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**    Page 2 of 2

MC-025

| SHORT TITLE: CCS vs NAREDO, et al. | CASE NUMBER: RIC439066 |
|---|---|

**ATTACHMENT (Number):** _____     **Page _1_ of _1_**
(This Attachment may be used with any Judicial Council form.)     (Add pages as required)

JUANA NAREDO aka JUANITA NAREDO aka JUANA ROMO aka JUANA N ROMO aka JUANA NAREDA ROMO

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this attachment are made under penalty of perjury.)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [New July 1, 2002]

**ATTACHMENT**
to Judicial Council Form

Cal. Rules of Court, rule 982

# EXHIBIT 4

December 21, 2016 Quit Claim Deed to Rafael Andres Valenzuela

Branch :O25   User :RSOL

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

Rafael A Valenzuela
19526 Lurin Avenue
Riverside,   CA 92508

**2016-0571477**
12/21/2016 04:16 PM Fee: $ 28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

THIS SPACE FOR RECORDER'S USE ONLY·

### QUITCLAIM DEED                                                      420
THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $NONE   CITY TRANSFER TAX $NONE
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area [X] City of Desert Hot Springs AND

"This is a bonafide gift and the grantor received nothing in return, R & T 11911."
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Juana R. Naredo, a Single Woman AND William Deloya, a Single Man, as Join Tenants,**

do(es) hereby remise, release and forever quitclaim to:

**Rafael Andres Valenzuela, a Single Man.**

the real property in the City of Desert Hot Springs, County of Riverside, State of California, described as:

LOT 755, TR#: 6  LOT 755 MB 030/068  DOS PALMAS TR UNIT 6  Tract in the City of Desert Hot Springs, County
of Riverside, State of California, as recorded in the Office of the County Recorder of said County.
APN: 656-102-028
Also Known as: 15160 Via Montana,  Desert Hot Springs, CA 92240

A notary public or other officer completing
this certificate verifies only the identity of
the individual who signed the document to
which this certificate is attached, and not
the truthfulness, accuracy, or validity of
that document.

Juana R. Naredo    and    William Deloya

DATED March 31, 2016
STATE OF CALIFORNIA
COUNTY OF Riverside
On  March  31  2016
before me, Michelle Martinez
A Notary Public personally appeared
William Celis Deloya

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

**MICHELLE MARTINEZ**
Commission No.2087121
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires OCTOBER 23, 2016

Signature
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:                          (Seal)

### "SEE ATTACHED DOCUMENT"

DOC #2016-0571477  Page 2 of 2

## CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          }

COUNTY OF Riverside          }

On 12/21/2016 before me, _____ Cynthia Tovar _____ Notary Public,

Date          (here insert name and title of the officer)

personally appeared      Juana R. Naredo

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

CYNTHIA TOVAR
COMM. #2096260
Notary Public - California
RIVERSIDE COUNTY
My Comm. Exp. Feb. 5, 2019

Signature: _____      (Seal)

_____ OPTIONAL _____

Description of Attached Document

Title or Type of Document: Quitclaim Deed          Number of Pages: 1

Document Date: 3/31/16    Other: William Deloya

2015 Apostille Service. 707-992-5551 www.CaliforniaApostille.us      California Mobile Notary Network  www.CAMNN.com

# EXHIBIT 5

Proof of Current Loan Balance on 1st Lien

Page 1 of 1

**Loan Statement**


CENLAR
CENTRAL LOAN ADMINISTRATION & REPORTING
PO Box 77404
Ewing, NJ 08628
**STATEMENT ENCLOSED**

| | |
|---|---|
| Statement Date: | 05/01/17 |
| Account Number: | 0077346872 |
| Payment Due Date | 06/01/17 |
| **Amount Due** | **$2,320.03** |

*If payment is received after 06/17/17, $43.77 late fee will be charged.*

**Contact Us**
Customer Service/Pay By Phone: 877-237-2662
Website: www.loanadministration.com
E-mail: customerservice@loanadministration.com

*Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to PO Box 77423 Ewing NJ 08628*

+ 0755037 000347214 09CLST 0060900 P4 1AF041 -0 PG
JUANA NAREDO
WILLIAM DELOYA
15160 VIA MONTANA
DESERT HOT SPRINGS CA 92240-6921

---

### Account Information
Property Address    15160 VIA MONTANA
                    DESERT HOT SPRINGS, CA 92240

| | |
|---|---|
| Outstanding Principal | $152,887.24 |
| Escrow Balance | $922.66 |
| Maturity Date | April 2046 |
| Interest Rate | 4.0000% |
| Prepayment Penalty | NONE |

### Explanation of Amount Due
If you are Experiencing Financial Difficulty: You may call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287, or go to www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm for a list of homeowner counselors or counseling organizations in your area.

| | |
|---|---|
| Principal | $234.15 |
| Interest | $508.85 |
| Escrow (for Taxes and Insurance) | $351.36 |
| Other | $0.00 |
| **Current Payment Due 06/01/17** | **$1,094.36** |
| Total Fees Charged Since Last Statement | $0.00 |
| Overdue Amount | $1,225.67 |
| **Total Amount Due** | **$2,320.03** |

### Transaction Activity (04/18/2017 to 05/01/2017)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 05/01/17 | 04/2017 PAYMT - THANK YOU | | $1,094.36 |

### Past Payments Breakdown
*Unapplied funds represent funds that are held in suspense waiting final application. If this amount represents a partial payment, your payment will be applied upon receipt of the amount required to complete your payment

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $232.60 | $925.78 |
| Interest | $510.40 | $2,046.22 |
| Escrow (Taxes and Insurance) | $351.36 | $1,405.44 |
| Other | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| *Unapplied Funds | $0.00 | $0.00 |
| Total | $1,094.36 | $4,377.44 |

### IMPORTANT MESSAGES
Cut down on paper and get your monthly bill electronically! Log on to www.loanadministration.com for E-Bill Registration!

---

See Reverse Side For Additional Important Information   Please return this portion with your payment

Make Checks Payable To:

A9

Juana Naredo
William Deloya
15160 Via Montana
Desert Hot Springs CA 92240-6921

Check this box if your address or personal information has been updated on the reverse of this payment coupon.

CENLAR
CENTRAL LOAN ADMINISTRATION & REPORTING

| | |
|---|---|
| Payment Due Date: | 06/01/17 |
| Current Payment: | $1,094.36 |
| Past Due Amount: | $1,094.36 |
| Unpaid Late Charges: | $131.31 |
| Other Fees: | $0.00 |
| **TOTAL AMOUNT DUE:** | **$2,320.03** |
| After 06/17/17 Pay: | $2,363.80 |

Account Number:
0077346872

Amount
Enclosed   $

| Late Charge | $_____ |
|---|---|
| Additional Principal | $_____ |
| Additional Escrow | $_____ |
| Other Fees | $_____ |
| Total Amount paid | $_____ |
| | *See reverse side for instructions |

*Please do not fold, tape or staple check or coupon.*
*Please only use blue or black ink.*

PAYMENT PROCESSING CENTER
PO BOX 54040
LOS ANGELES, CA 90054-0040

0300000007734687200A9PS551000001094360000011381300000232003000000004377

IMPORTANT INFORMATION
Please Read Carefully

**Payment Information:**
Payments are due and payable by the Payment Due Date. Payments can be made online through our website (if offered) or you can access our Automated Telephone System by calling the number listed on this statement. If you wish to pay by check, please be sure to:
1. Remove your coupon from the bottom of your loan statement and send it along with your check or money order to the address shown on the coupon.
2. **Do not send cash.** DO NOT include correspondence with your payment.
3. When sending your monthly payment via overnight carrier, express or certified mail, or if sending a principal payment separate from your monthly payment, please use the following address: Payment Processing 425 Phillips Blvd, Ewing, NJ 08618. When sending a principal payment only, please remember to indicate "principal only" along with your loan number in the memo section of your check. PLEASE NOTE: Additional principal payments can only be made with, or after your current month's payment. NO principal payments can be applied to loans that are not current.
4. The disposition of a partial payment received may depend on a number of factors including but not limited to: the amount of the partial payment, whether your loan is delinquent, the investor of your loan, whether your loan contains an escrow feature, the number of times a partial payment was received within a 12 month period, whether your loan is being or has been modified. For any of these reasons, a partial payment may be (1) returned to you, (2) applied to your loan, (3) accepted but held in a non-interest bearing unapplied funds account until you send us additional funds sufficient to equal a full periodic payment due.
5. If payment is in excess of the amount due, you must indicate on the coupon how the excess is to be applied. Monies received in excess of the payment due that are not identified for application may be used to make multiple payments, which could make your loan current or 1 month prepaid. Remaining monies may be applied first to pay any other balances due, such as fees and advances, if permitted by applicable law.
6. We reserve the right to redeposit returned checks. Redeposit and returned check fees will be charged unless prohibited by law.

## Important Contact Information
**Please include your account number on ALL correspondence. DO NOT SEND correspondence with your payment**

| **Payments** | **Tax Bills** | **Insurance** | **Collections** | **All other Correspondence** |
|---|---|---|---|---|
| PO Box 54040 | CoreLogic | PO Box 202028 | PO Box 77407 | PO Box 77404 |
| Los Angeles, CA 90054-0040 | 1 Corelogic Dr. | Florence, SC 29502-2028 | Ewing, NJ 08628 | Ewing, NJ 08628 |
| | Westlake, TX 76262 | mycoverageinfo.com | FAX 609-538-4017 | FAX 609-538-4005 |
| | | PIN: CEN300 | | |

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING. THIS LOAN STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION.

**Automatic Payment (ACH):**
We offer a free, convenient service that automatically debits your payment each month from your checking or savings account. To take advantage of this service, visit our website (if offered) and complete the Automatic Payment (ACH) Authorization or contact Customer Service directly.

**Payoff Request**
A written request should be submitted in advance for a payoff statement. You may request a payoff statement be faxed to you by calling 1-877-7PAYOFF (1-877-772-9633) (a fee for faxing applies, if permitted by applicable law). Please have available your account number, social security number, the payoff date, and your fax number. No verbal information can be provided.

**Automated Loan Information:**
You can access your loan information 24 hours a day, 7 days a week by calling our Customer Service automated telephone system or by going online at the web address listed on the reverse side of this statement (if offered). Please have your account number and social security number available.

**Servicemembers Civil Relief Act (SCRA):**
Eligible servicemembers and their spouses or civil partners may receive protections under the SCRA. To find out how to determine if you are eligible for protections under SCRA and to receive instructions on how to invoke your rights, please contact us at the number listed.

**Insurance Coverage:**
All loans are required to have adequate property insurance in force at all times, including flood insurance, if the property is situated in a special flood hazard area. Acceptable hazard and extended dwelling insurance coverage amounts are equal to 100% of the full insured value of the improvements, or equal to the loan balance, if greater than 80% of the replacement costs. Flood insurance must equal the lesser of all loan balances, the full structure replacement cost value or NFIP flood coverage maximum for the property type. There may be, at lender discretion, situations where the flood coverage cannot be lower than 80% of the replacement costs. Please consult your insurance agent to determine the adequacy of your coverages. At time of renewal or if changing insurance companies, please direct any evidence of insurance coverage through one of the following methods: through the website at mycoverageinfo.com using PIN: CEN300, by fax: (843) 413-7133 or mail to: PO Box 202028 Florence, SC 29502-2028. Failure to provide evidence of adequate insurance may result in the placement of coverage at your expense.

If your property is damaged by fire, flood or by any other cause, you must notify us immediately and we will instruct you on how to proceed.

**Property Taxes:**
If you received your Real Estate tax bill for an item that is included on your Annual Escrow Statement, please keep it for your records so we receive the tax information directly from your taxing authority, it is not necessary to contact or mail us this information. However, if you receive a delinquent tax bill/notice, please forward bill to us at DelinquentTaxes@loanadministration.com for review and handling

Supplemental tax bills are generally borrower's responsibility as the bills are sent directly to the borrowers from your tax office and no information or reporting regarding these bills are provided to us. However, if your closing agent collected funds at the time of settlement of your loan in anticipation of a supplemental tax bill being issued, then please submit to us for review at SupplementalTaxes@loanadministration.com.

All Tax Exemption requests must be submitted by YOU directly to your tax office. If approved, please forward the documentation to us at TaxExemption@loanadministration.com

Please print any changes to your name or address below:

Name: _____

Street: _____

City: _____ State: _____ Zip: _____

Home Phone: _____ Business Phone: _____

E-mail Address: _____

Please mark the reason for the change and attach a copy of the recorded document, license, decree, or certificate if applicable.

( ) Address Change   ( ) Name Change   ( ) Marriage   ( ) Divorce   ( ) Death

*Thank You*
*For Your Business*
*Throughout The*
*Year!*

# EXHIBIT 6

Deed of Trust of 3rd Lien Recorded on January 11, 2018

RECORDING REQUESTED BY:
REYES VALENZUELA

**When Recorded Mail Document to:**
Marisable Pulcini
241 S. Figueroa Street, Suite 100
Los Angeles, California 90012

**2018-0014507**

01/11/2018 05:00 PM Fee: $ 249.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

*78ə*

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

APN: 656-102-028

# DEED OF TRUST WITH ASSIGNMENT OF RENTS

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this Deed of Trust, which is dated January 8, 2018, together with all Riders to this document.
**(B)** "**Borrower**" is RAFAEL ANDRES VALENZUELA. Borrower is the Trustor under this Security Instrument.
**(C)** "**Lender**" is MARISABEL PULCINI. Lender's address is 241 S. Figueroa Street, Los Angeles, California 90012. Lender is the beneficiary under this Security Instrument.
**(D)** "**Trustee**" is JACQUELINE TAPIA or Lender's designee. Jacqueline Tapia's address is 241 S. Figueroa Street, Los Angeles, California 90012.
**(E)** "**Note**" means the promissory note signed by Borrower and in favor of Beneficiary dated January 8, 2018. The Note states that Borrower owes Lender $30,000.00 (Thirty Thousand Dollars) with interest to begin on the 11th day after execution of this Security Instrument. Borrower has promised to pay this debt in full not later than July 9, 2018 or within 5 days after the close of escrow on Borrower's refinance loan or a loan to purchase the real property described below, whichever occurs first.
**(F)** "**Property**" means the real property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "**Loan**" means the debt evidenced by: (1) the Note, plus interest, any prepayment charges and late charges due under the Note, (2) all sums due under this Security Instrument, plus interest, and (3) additional sums and interest thereon which may hereafter be loaned to Borrower, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

**(H)**    **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider ☐ Other(s) [specify] _____
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider

**(I)**    **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)**    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)**    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)**    **"Escrow Items"** means those items that are described in Section 3.

**(M)**    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)**    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)**    **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)**    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)**    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY OF RIVERSIDE:

LOT 755 AS SHOWN ON THAT CERTAIN MAP ENTITLED DOS PALMAS TRACT UNIT NUMBER 6, WHICH MAP FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA IN BOOK 30 OF MAPS PAGE(S) 68 AND 69.

which currently has the address of 15160 Via Montana, Desert Hot Springs, California 92240 ("Property Address"):
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; © certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005    1/01    *(page 3 of 17 pages)*

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.**    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.**    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive

Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.    Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid

premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid

further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.    Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

**(a)      Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b)    Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.    Assignment of Miscellaneous Proceeds; Forfeiture.    All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

"Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.     Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.     Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.     Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as

a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.    **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.    **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address

to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.   **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all

necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.    **Acceleration; Remedies.**  **Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23.    **Reconveyance.**  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the

fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

    **24.**   **Substitute Trustee.**  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

    **25.**   **Statement of Obligation Fee.**  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Rafael A. Valenzuela_

_____ (Seal)
                                               - Borrower

_____     _____ (Seal)
                                               - Borrower

_____ [Space Below This Line for Acknowledgment]_____

California Loose Certificate Attached

## California All-Purpose Certificate of Acknowledgment

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Riverside _____    s.s.

On Jan. 08. 2018 _____ before me, ___ Amber Nicole Greene , Notary Public ___,
                                                                 Name of Notary Public, Title

personally appeared _____ Rafael A. Valenzuela _____
                                                          Name of Signer (1)

_____
                              Name of Signer (2)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

AMBER NICOLE GREENE
COMM. # 2171129
NOTARY PUBLIC · CALIFORNIA
RIVERSIDE COUNTY
MY COMM. EXP. Nov. 7, 2020

Seal

————————— OPTIONAL INFORMATION —————————

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.*

## Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of Deed OF Trust With Assignment OF Rents

containing _____ pages, and dated 01/08/2018 .

The signer(s) capacity or authority is/are as:
☐ Individual(s)
☐ Attorney-in-fact
☐ Corporate Officer(s) _____
                                              Title(s)

☐ Guardian/Conservator
☐ Partner - Limited/General
☐ Trustee(s)
☐ Other: _____

representing: _____
Name(s) of Person(s) or Entity(ies) Signer is Representing

### Additional Information

Method of Signer Identification

Proved to me on the basis of satisfactory evidence:
☐ form(s) of identification ☐ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _____ Entry # _____

Notary contact: _____

Other
☐ Additional Signer ☐ Signer(s) Thumbprint(s)
☐ _____

© 2009-2015 Notary Learning Center - All Rights Reserved    You can purchase copies of this form from our web site at www.TheNotarysStore.com

## ASSIGNMENT OF RENTS RIDER

Rafael Andres Valenzuela hereby assigns his right to collect rents, issues and profits of the below described real property to Marisabel Pulcini or her agent. The purpose of this assignment is to secure payments pursuant to the promissory note in the total amount of $30,000.00 the following described property located in the COUNTY OF RIVERSIDE:

LOT 755 AS SHOWN ON THAT CERTAIN MAP ENTITLED DOS PALMAS TRACT UNIT NUMBER 6, WHICH MAP FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA IN BOOK 30 OF MAPS PAGE(S) 68 AND 69.

which currently has the address of 15160 Via Montana, Desert Hot Springs, California 92240

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3005    1/01    *(page 17 of 17 pages)*

# EXHIBIT 7

Proof of Value of Property at Time of Bk filing

Jeff Somers Appraisals, Inc
79201 Falmouth Drive
Bermuda Dunes, CA 92203
(760) 345-6060

01/16/2019

Rafael Valenzuela
Rafael Andres Valenzuela
19526 Lurin Ave
Riverside, CA 92508-9577

Re:   Property:        15160 Via Montana
                       Desert Hot Springs, CA 92240
      Borrower:        Rafael Andres Valenzuela
      File No.:        010620DHS

Opinion of Value: $    170,000
Effective Date:        05/16/2017

In accordance with your request, I have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of the appraisal is to develop an opinion of market value for the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership for "Administrative" purposes only.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The opinion of value reported above is as of the stated effective date and is contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me at 760-345-6060 if I can be of additional service to you.

Respectfully,

Jeffery L. Somers
License or Certification #: AR008376
State: CA   Expires: 10/17/2021
jefferysomers@dc.rr.com

**FROM:**

Jeff Somers Appraisals, Inc

Jeff Somers Appraisals, Inc

79201 Falmouth Dr

Bermuda Dunes, CA 92203-1535

Telephone Number: (760) 345-6060    Fax Number: (760) 345-6405

# INVOICE

| INVOICE NUMBER |
|---|
| 010620DHS |
| **DATE** |
| 01/14/2020 |

| REFERENCE | |
|---|---|
| Internal Order #: | |
| Lender Case #: | |
| Client File #: | Valenzuela |
| Main File # on form: | 010620DHS |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | 04-3697461 |

**TO:**

Rafael Valenzuela

Rafael Andres Valenzuela

19526 Lurin Ave

Riverside, CA 92508-9577

Telephone Number:    Fax Number:

Alternate Number:    E-Mail:

## DESCRIPTION

| | | | | |
|---|---|---|---|---|
| Lender: Rafael Andres Valenzuela | | Client: Rafael Andres Valenzuela | | |
| Purchaser/Borrower: Rafael Andres Valenzuela | | | | |
| Property Address: 15160 Via Montana | | | | |
| City: Desert Hot Springs | | | | |
| County: Riverside | | State: CA | | Zip: 92240 |
| Legal Description: Lot 755, MB 030/068, Dos Palmas Tr Unit 6 | | | | |

| FEES | AMOUNT |
|---|---|
| Full appraisal report | 460.00 |
| **SUBTOTAL** | 460.00 |

| PAYMENTS | | | AMOUNT |
|---|---|---|---|
| Check #: | Date: 01/06/2020 | Description: Paid In Full | 460.00 |
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | **SUBTOTAL** | 460.00 |
| Thank You! | | **TOTAL DUE** $ | 0.00 |

---

Please Return This Portion With Your Payment

**FROM:**

Rafael Valenzuela

Rafael Andres Valenzuela

19526 Lurin Ave

Thousand Palms, CA 92276

Telephone Number:    Fax Number:

Alternate Number:    E-Mail:

| AMOUNT DUE: | $ | 0 |
|---|---|---|
| AMOUNT ENCLOSED: | $ | |

| INVOICE NUMBER |
|---|
| 010620DHS |
| **DATE** |
| 01/14/2020 |

**TO:**

Jeff Somers Appraisals, Inc

Jeff Somers Appraisals, Inc

79201 Falmouth Dr

Bermuda Dunes, CA 92203-1535

| REFERENCE | |
|---|---|
| Internal Order #: | |
| Lender Case #: | |
| Client File #: | Valenzuela |
| Main File # on form: | 010620DHS |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | 04-3697461 |

Assumptions, Limiting Conditions & Scope of Work

| | | File No.: 010620DHS |
|---|---|---|
| Property Address: 15160 Via Montana | City: Desert Hot Springs | State: CA | Zip Code: 92240 |
| Client: Rafael Andres Valenzuela | Address: 19526 Lurin Ave, Riverside, CA 92508-9577 |
| Appraiser: Jeffery L. Somers | Address: 79201 Falmouth Drive, Bermuda Dunes, CA 92203 |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

– The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

– The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

– If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

– The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

– If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

– The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

– The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

– The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

– If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

– An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser–client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

– The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

– An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non–invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.


The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

Under USPAP Standards Rule 2-2(b), this is a Restricted Appraisal Report, and is intended only for the sole use of the named client. There are no other intended users. The client must clearly understand that the appraiser's opinions and conclusions may not be understood properly without additional information in the appraiser's work file.

In developing this appraisal, the appraiser has incorporated only the Sales Comparison Approach. The appraiser has excluded the Cost and Income Approaches to Value, due to being inapplicable given the limited scope of the appraisal. The appraiser has determined that this appraisal process is not so limited that the results of the assignment are no longer credible, and the client agrees that the limited scope of analysis is appropriate given the intended use.

Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):

**GP RESTRICTED**    Copyright© 2013 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRTD2AD - "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE    12/2013

# Certifications

| | File No.: | 010620DHS |
|---|---|---|

| Property Address: 15160 Via Montana | City: Desert Hot Springs | State: CA | Zip Code: 92240 |
|---|---|---|---|
| Client: Rafael Andres Valenzuela | Address: 19526 Lurin Ave, Riverside, CA 92508-9577 | | |
| Appraiser: Jeffery L. Somers | Address: 79201 Falmouth Drive, Bermuda Dunes, CA 92203 | | |

**APPRAISER'S CERTIFICATION**

I certify that, to the best of my knowledge and belief:
– The statements of fact contained in this report are true and correct.
– The credibility of this report, for the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
– I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
– Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
– I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
– My engagement in this assignment was not contingent upon developing or reporting predetermined results.
– My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
– My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
– I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
– Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
– Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

Additional Certifications:

**DEFINITION OF MARKET VALUE \*:**
Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
\* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

| Client Contact: Rafael Valenzuela | Client Name: Rafael Andres Valenzuela |
|---|---|
| E-Mail: ralphmyrealtor@gmail.com | Address: 19526 Lurin Ave, Riverside, CA 92508-9577 |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *Jeffery L. Somers* | |
| Appraiser Name: Jeffery L Somers | Supervisory or Co-Appraiser Name: |
| Company: Jeff Somers Appraisals, Inc | Company: |
| Phone: (760) 345-6060    Fax: (760) 345-6405 | Phone:    Fax: |
| E-Mail: jefferysomers@dc.rr.com | E-Mail: |
| Date Report Signed: 01/14/2020 | Date Report Signed: |
| License or Certification #: AR008376    State: CA | License or Certification #:    State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 10/17/2021 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection: 01/06/2020 | Date of Inspection: |

**GP RESTRICTED**

Copyright© 2013 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

| | | | | | |
|---|---|---|---|---|---|
| Borrower | Rafael Andres Valenzuela | | | File No. | 010620DHS |
| Property Address | 15160 Via Montana | | | | |
| City | Desert Hot Springs | County | Riverside | State CA | Zip Code 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | |

**Purpose**

The purpose of this report is to develop an opinion of market value for the subject property, as defined herein.  The opinion of market value is to be used by the Client for "Administrative" purposes.

**Scope of Work**

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications.  The appraiser must , at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his analysis, opinions and conclusions in this appraisal report.

**Intended Use / Intended User**

Intended Use:        The intended use of this appraisal report is for "Administrative" purposes only.  This is a "Current Market Value" appraisal as of May 8, 2019.

Intended User(s):    Rafael Valenzuela is the intended user identified for this report.

**History of Property**

Current listing information:      The subject property has not been listed for sale in the past twelve months.  This was verified by the Local Multiple Listing Service.

Prior sale:    There was a prior sale of the subject in the past three years. The subject transferred March 11, 2016.

**Exposure Time / Marketing Time**

The current exposure time of the subject market is currently at four mouths for small residential income property homes that have been priced competitively in the market place.

**Personal (non-realty) Transfers**

N/A

**Additional Comments**

Smoke detectors are located in rooms and hallway. Carbon monoxide detector is located in the hallway.  The water heater wasn't observed. The water heater should have two safety straps around it.

All utilities were on at the time of the inspection.

**Supplemental Certification:**

I certify that to the best of my knowledge and belief:  I have rendered and performed a prior service regarding the subject property, as an appraiser, or in any other capacity, with the 3 year period immediately preceding acceptance of this appraisal assignment.  I appraised the subject property for it's purchase transaction in 2016.

**Certification Supplement**

1.  This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.

2.  My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

3. This appraisal report is for "Administrative" purposes only.  This report is not intended for any other purpose. Date of value is as of May 16, 2017.

| | | | | |
|---|---|---|---|---|
| Appraiser: | Jeffery L. Somers | Supervisory Appraiser: | | |
| Signed Date: | 01/14/2020 | Signed Date: | | |
| Certification or License #: | AR008376 | Certification or License #: | | |
| Certification or License State: | CA  Expires: 10/17/2021 | Certification or License State: | Expires: | |
| Effective Date of Appraisal: | 05/16/2017 | Inspection of Subject: | ☐ Did Not  ☐ Exterior Only  ☐ Interior and Exterior | |

Form FUA_LG2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Residential appraisal summary report

File No.: 010620DHS

## SUBJECT

| | | | |
|---|---|---|---|
| Property Address: | 15160 Via Montana | City: Desert Hot Springs | State: CA   Zip Code: 92240 |
| County: | Riverside | Legal Description: Lot 755, MB 030/068, Dos Palmas Tr Unit 6 | |

Assessor's Parcel #: 656-102-028

Tax Year: 2018    R.E. Taxes: $ 2,938    Special Assessments: $ None    Borrower (if applicable): Rafael Andres Valenzuela

Current Owner of Record: Rafael Andres Valenzuela    Occupant: ☐ Owner  ☒ Tenant  ☐ Vacant    ☐ Manufactured Housing

Project Type: ☒ PUD  ☐ Condominium  ☐ Cooperative  ☐ Other (describe)    HOA: $ ☐ per year  ☐ per month

Market Area Name: Desert Hot Springs    Map Reference: 697/A7    Census Tract: 0445.15

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not otherwise specified): ☐ Current (the Inspection Date is the Effective Date) ☒ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach  ☐ Cost Approach  ☐ Income Approach    (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)

Intended Use: The intended use of this appraisal report is for "Administrative" purposes only. This is a "Retrospective Market Value" appraisal as of May 16, 2017.

Intended User(s) (by name or type): Rafael Valenzuela is the intended user identified for this report.

Client: Rafael Andres Valenzuela    Address: 19526 Lurin Ave, Riverside, CA 92508-9577

Appraiser: Jeffery L. Somers    Address: 79201 Falmouth Drive, Bermuda Dunes, CA 92203

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban  ☒ Suburban  ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|
| Built-up: | ☒ Over 75%  ☐ 25-75%  ☐ Under 25% | | PRICE | AGE | One-Unit 85 % | Not Likely |
| Growth rate: | ☐ Rapid  ☒ Stable  ☐ Slow | ☒ Owner  95 | $(000) | (yrs) | 2-4 Unit 10 % | Likely *  ☐ In Process * |
| Property values: | ☐ Increasing  ☒ Stable  ☐ Declining | ☐ Tenant | 30  Low  2 | | Multi-Unit 5 % | * To: From vacant land to |
| Demand/supply: | ☐ Shortage  ☒ In Balance  ☐ Over Supply | ☐ Vacant (0-5%) | 380  High  67 | | Comm'l 0 % | improved. |
| Marketing time: | ☐ Under 3 Mos.  ☒ 3-6 Mos.  ☐ Over 6 Mos. | ☐ Vacant (>5%) | 185  Pred  25 | | Vacant 10 % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above conclusions and market conditions): Subject is bounded on the north by Mission Lakes Blvd. On the south by Dillon Road on the east by Mountain View Road & on the west by West Drive. The subject is located in a mostly single family residential area with some small residential income properties in south "Desert Hot Springs" which is made up of a mixture of mature & newer constructed homes in the past 10 years. There are vacant SFR lots available for the "highest and best use". Shopping, schools, parks and other city goods &services are all .5 to 1.5 miles from the subject. Market research shows that property values and rents in the subject's market have been more stable and the current trend appears to be continued stable market values and rents for the next six months. Property values in this segment of the market appear to be stable. The current active listings are reflecting more stable prices. Inventories appear to be in balance supply & marketing times are about 3 to 6 months. Concessions of the seller assisting with buyer closing cost can be common for government financing, however typical conventional financing concessions are less. The vacancies appear stable w/units being occupied by tenants. Employment is currently still lagging behind national averages in this market area based on the national economic unemployment statistics. There can be financing concessions for this segment of the market. The current exposure time for the subject is three months.

## SITE DESCRIPTION

Dimensions: 60' x 122.6'+/- sf rectangular (see plat map)    Site Area: 7,356 sf

Zoning Classification: W-2    Zoning Compliance: ☒ Legal  ☐ Legal nonconforming (grandfathered)  ☐ Illegal  ☐ No zoning    Description: Controlled Development

Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown  Have the documents been reviewed? ☐ Yes ☒ No  Ground Rent (if applicable) $  0/

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Multiple family Residential    Use as appraised in this report: Multiple family residential

Summary of Highest & Best Use: The subject property is being used for it's highest and best use as a two unit family resident. The homes to the south, west and north of the subject property are single family residents. To the west and north of the subject is commercial use of a religious organization.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Level |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | | Street | Asphalt | ☒ | ☐ | Size | Typical for area |
| Gas | ☒ | ☐ | | Curb/Gutter | None | ☐ | ☐ | Shape | Rectangular |
| Water | ☒ | ☐ | | Sidewalk | None | ☐ | ☐ | Drainage | Appears adequate |
| Sanitary Sewer | ☒ | ☐ | | Street Lights | Unit lights | ☐ | ☒ | View | Resdl/Mtns |
| Storm Sewer | ☐ | ☐ | N/a | Alley | None | | | | |

Other site elements: ☒ Inside Lot  ☐ Corner Lot  ☐ Cul de Sac  ☒ Underground Utilities  ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  X  FEMA Map # 0606SC0905G  FEMA Map Date 08/28/2008

Site Comments: The site is an interior lot of typical size graded at street level. No adverse easements, encroachments, encumbrances, contracts, restrictions, reservations or assessments which would affect value.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | Exterior Description | Foundation | Basement ☐ None | Heating |
|---|---|---|---|---|
| # of Units two  ☒ Acc.Unit | Foundation Concrete/Average | Slab Concrete | Area Sq. Ft. None | Type Adq. |
| # of Stories One | Exterior Walls Stucco/Average | Crawl Space None | % Finished N/a | Type Fau |
| Type ☐ Det.  ☒ Att. ☐ | Roof Surface Built-up/Average | Basement None | Ceiling N/a | Fuel N.Gas |
| Design (Style) Duplex | Gutters & Dwnspts. Adeq.overhang | Sump Pump None | Walls N/a | |
| ☒ Existing  ☐ Proposed  ☐ Und.Const. | Window Type Vinyl/Dual/Good | Dampness None noted | Floor N/a | Cooling Adq |
| Actual Age (Yrs.) 55 | Storm/Screens Mesh/Good | Settlement None noted | Outside Entry N/a | Central Cac |
| Effective Age (Yrs.) 32 yrs. | | Infestation None noted | | Other N/a |

| Interior Description | Appliances | Attic ☒ None | Amenities | Car Storage ☒ None |
|---|---|---|---|---|
| Floors Tile/Wd/Laminate/Avg. | Refrigerator ☒ | Stairs | Fireplace(s) # One    Woodstove(s) # | Garage # of cars ( 1  Tot.) |
| Walls Dw/paint/Good | Range/Oven ☒ | Drop Stair | Patio Slab | Attach. |
| Trim/Finish Wd/paint/Good | Disposal ☒ | Scuttle | Deck N/A | Detach. |
| Bath Floor Tile/Good | Dishwasher ☐ | Doorway | Porch Covered | Blt.-In |
| Bath Wainscot Fiber Glass/Average | Fan/Hood ☒ | Floor | Fence Wall/Link Fence | Carport |
| Doors Holocore/solid/Good | Microwave ☐ | Heated | Pool N/A | Driveway 1 |
| | Washer/Dryer ☒ | Finished | N/A | Surface Concrete/gravel |

Finished area above grade contains: 8 Rooms  4 Bedrooms  3.0 Bath(s)  2,121 Square Feet of Gross Living Area Above Grade

Additional features: Perimeter block & link fence, metal gate driveway entry, some updated interior w/wood laminate flooring, kitchen cabinetry, counters & appliances. The subject units have window A/C, wall heating and evaporative cooling units. There is a rear large storage room, a storage shed and no landscaping. There is a slab hardscape area in the rear yard.

Describe the condition of the property (including physical, functional and external obsolescence): The floor plan is functionally adequate and there is normal physical obsolescence and no functional or external obsolescence noted at the time of the inspection. I have not been provided with any documentation revealing any physical deficiencies and have reported only apparent adverse conditions. The owner may not rely on this report for structural conditions that may exist and is encouraged to obtain a home inspection by a professional home inspector to determine if problems exists. The subject is of average quality design and of average maintenance. The effective age is 32 years and the economic life is 70 years. The remaining economic life is 38 years.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL    Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    3/2007

# Residential appraisal Summary report

File No.: 010620DHS

## TRANSFER HISTORY

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): Desert area MLS and NDC data

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: |
|---|---|
| Date: 03/11/2016, Doc#129558 | The subject has not been listed for sale during the past year. The subject has transferred two different times in the past three years. That information is recorded to the left. |
| Price: $158,500 | |
| Source(s): NDC/Data | |
| 2nd Prior Subject Sale/Transfer | |
| Date: 01/23/2015, Doc#030008 | |
| Price: $80,000 | |
| Source(s): NDC Data | |

## SALES COMPARISON APPROACH TO VALUE (if developed)  [ ] The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 16160 Via Montana | 16655 Carol Dr | | 66327 8th St | | 11388 Ocotillo Rd | |
| | Desert Hot Springs, CA 92240 | Desert Hot Springs, CA 92240 | | Desert Hot Springs, CA 92240 | | Desert Hot Springs, CA 92240 | |
| Proximity to Subject | | 1.46 miles SW | | 2.17 miles N | | 1.92 miles N | |
| Sale Price | $ N/A | $ 189,000 | | $ 170,000 | | $ 148,000 | |
| Sale Price/GLA | $ /sq.ft. | $ 102.27 /sq.ft. | | $ 121.43 /sq.ft. | | $ 115.63 /sq.ft. | |
| Data Source(s) | Inspection | NDC Data/MLS/Realist | | NDC Data/MLS/Realist | | NDC Data/MLS/Realist | |
| Verification Source(s) | 01/06/2020 | Doc#309359, Contract 05/2017 | | Doc#251784, Contract 05/2017 | | Doc#055217, Contract 08/2016 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | None | FHA | | Cntl | | Cash | |
| Concessions | None | 185.5K 1st TD | 0 | 127.5K 1st TD | 0 | None | 0 |
| Date of Sale/Time | N/A | 07/28/2017 | Coe | 06/22/2017 | Coe | 02/08/2017 | Coe |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Suburban/Average | Suburban/Average | | Suburban/Average | | Suburban/Average | |
| Site | 7,356 sf | 6,970 +/- sf | | 12,197 +/- sf | | 6,970 +/- sf | |
| View | Resdl/Mtns | Resdl/Mtns | | Resdl/Mtns | | Resdl/Mtns | |
| Design (Style) | Duplex | Ranch | | Ranch | | Ranch | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 55 | 44 | 0 | 67 | 0 | 64 | 0 |
| Condition | Average | Good | -5,000 | Good | -5,000 | Average | 0 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 8  4  3.0 | 8  4  2.0 | +2,000 | 8  2  2.0 | +2,000 | 9  3  3.0 | +3,000 |
| Gross Living Area | 2,121 sq.ft. | 1,848 sq.ft. | +2,730 | 1,400 sq.ft. | +7,210 | 1,280 sq.ft. | +8,410 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | Unfurnished | Unfurnished | | Unfurnished | | Unfurnished | |
| Functional Utility | Average | Good/See below | | Good/See below | | Good/See below | |
| Heating/Cooling | Fau/Cac | Fau/Cac | | Fau/Cac | | Fau/Cac | |
| Energy Efficient Items | Dual Pane/insulation | Dual Pane/Insulation | | Singl Pane/insulation | 0 | Singl Pane/insulation | 0 |
| Garage/Carport | Open Parking | Open Parking | | Open Parking | | 2 Car/Att | -2,000 |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Built-ins/upgrades | Bilt-ins/upgd | Bilt-ins/upgd/Super | -10,000 | Bilt-ins/upgd/Super | -10,000 | Bilt-ins/upgd/Infer | +7,500 |
| Pool/fence/FP | No Pool/FP/Link Fnc | No Pool/Link Fnc | | No Pool/Link Fnc | | No Pool/Link Fnc | |
| Storage Sheds | Storage Shed | No Storage Shed | 0 | No Storage Shed | | No Storage Shed | 0 |
| Bonus Room | Bonus Room | Bonus Room | | No Bonus Room | +4,000 | No Bonus Room | +4,000 |
| Net Adjustment (Total) | | [ ] + [X] - | $ -10,270 | [ ] + [X] - | $ -1,790 | [X] + [ ] - | $ 20,910 |
| Adjusted Sale Price of Comparables | | $ 178,730 | | $ 168,210 | | $ 168,910 | |

Summary of Sales Comparison Approach  Of all the sales investigated the above comparables were the more recent sales from the same competing market area. The reported comparables were similar in age, quality of construction, condition and of similar design. Most weight was given toward the middle of the adjusted range of the above market grid for determining the final opinion of value for the subject. No consideration was given to personal property or furnishings. See addendum for market comparison analysis comments.

Market Analysis Adjustments:

Condition adj. - Adjustments were calculated to comps that were determined to be have superior or inferior condition compared to the subject. The adjustment was calculated at 2.5% of the sale price and rounded to the nearest five thousand.
Bath adj. - Adjustments were calculated for superior full bathroom difference only at $2,000 for full bath difference.
Bedroom adj. - Downward adjustments were calculated for superior bedroom differences at $3,000 per bedroom.
Gross Living area adj. - Adjustments were calculated at $10 per sf when greater than 100 sf difference.
Upgrade adj. - Adjustments were estimated for the superior flooring, cabinetry, counters, appliances and any bathroom amenities of the subject compared to the Comparables. These adjustments were calculated at 5% of the sale price of the Comp and rounded.
Bonus Room adj. - The subject property has a bonus in the rear of the two units and there is a bathroom. An upward adjustment was calculated for the bonus room.

Based on information gathered & a careful analysis of the data, the final opinion of value of $170,000 for the subj. appears to be reasonable & supported.

Final Reconciliation of Value:

All four sale Comps are from the subject competing market. Due to the low density of the market the distances to the Comps couldn't be avoided. Of the four Comps, all of them were given equal consideration. Comp 2 was reported having dens in each unit. Those were given the same value as a bedroom. Of the four sales the actual range from low to high was $148,000 to $189,000. The adjusted range from low to high was $168,000 to $178,000. When considering and analyzing all the market value factors it was determined that the middle of the adjusted range was most reasonable. This adjusted data provides very good support for that opinion. The final opinion of value was determined to be $170,000.

The final opinion of value is ONE HUNDRED SEVENTY THOUSAND DOLLARS.

Indicated Value by Sales Comparison Approach $    170,000

GP RESIDENTIAL

Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE                                                          3/2007

# ADDITIONAL COMPARABLE SALES

File No.: 010620DHS

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 15160 Via Montana | 68360 Calle Cerrito | | | | | |
| | Desert Hot Springs, CA 92240 | Desert Hot Springs, CA 92240 | | | | | |
| Proximity to Subject | | 1.67 miles NE | | | | | |
| Sale Price | $ N/A | $ 165,000 | | $ | | $ | |
| Sale Price/GLA | $ /sq.ft. | $ 114.82 /sq.ft. | | $ /sq.ft. | | $ /sq.ft. | |
| Data Source(s) | Inspection | NDC Data/MLS/Realist | | | | | |
| Verification Source(s) | 01/06/2020 | Doc#042063, Contract 12/2016 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | None | Cntl | | | | | |
| Concessions | None | 162.1K 1st TD | 0 | | | | |
| Date of Sale/Time | N/A | 02/01/2017 | Coe | | | | |
| Rights Appraised | Fee Simple | Fee Simple | | | | | |
| Location | Suburban/Average | Suburban/Average | | | | | |
| Site | 7,356 sf | 7,841 +/- sf | | | | | |
| View | Resdl/Mtns | Residl/Mtns | | | | | |
| Design (Style) | Duplex | Ranch | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Age | 55 | 57 | 0 | | | | |
| Condition | Average | Average | | | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | +2,000 | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 8    4    3.0 | 8    4    2.0 | 0 | | | | |
| Gross Living Area | 2,121 sq.ft. | 1,437 sq.ft. | +6,840 | sq.ft. | | sq.ft. | |
| Basement & Finished | None | None | | | | | |
| Rooms Below Grade | Unfurnished | Unfurnished | | | | | |
| Functional Utility | Average | Good/See below | | | | | |
| Heating/Cooling | Fau/Cac | Fau/Cac | | | | | |
| Energy Efficient Items | Dual Pane/Insulation | Singl Pane/Insulation | 0 | | | | |
| Garage/Carport | Open Parking | 2 Car/Att | -2,000 | | | | |
| Porch/Patio/Deck | Patio | Patio | | | | | |
| Built-ins/upgrades | Blit-ins/upgd | Blit-ins/upgd | | | | | |
| Pool/fence/FP | No Pool/FP/Link Fnc | No Pool/Link Fnc | | | | | |
| Storage Sheds | Storage Shed | No Storage Shed | 0 | | | | |
| Bonus Room | Bonus Room | No Bonus Room | +4,000 | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 10,840 | | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | $ 175,840 | | $ | | $ | |

**Summary of Sales Comparison Approach**   The owners reliance on this appraisal is limited to utilization for determining a basis for "Administration" purpose on the subject property. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil or structures which would render it more or less valuable. The appraiser assumes no responsibility for such conditions or for engineering which might be required to discover such factors. If the client or borrower have any questions regarding these items, it is their responsibility to order the appropriated inspections by a licensed contractor or home inspector. This report is not a home inspection and the appraiser assumes no responsibility for these items. No party may rely on this document without possessing the complete 6 pages of the report plus all exhibits. The scope of work completed was appropriate for the named client and any intended uses, but may not be appropriate for other third party uses. The client may use this appraisal for a single determination only (1 time use).

Purpose and function of the appraisal: The appraisal is made to develop an opinion of the fee simple market value of the lot and improvements. The value opinion is for the client's use. "The intended user of this appraisal report is the client. No additional intended users are identified by the appraiser." The sale comparison approach to value was used to determine the final opinion of value for the subject property. The local multiple listing service interior & exterior photo's were considered when available for purposes of this report. Information obtained from NDC data, MLS & Realist public records data sources revealed that the comparables used in this analysis were the most applicable available. No personal property was assigned value in this appraisal report. All closed comparables were considered in arriving at a final opinion of value for the subject.

Comment about the subject: The subject is located in a mature neighborhood and market area in southern Desert Hot Springs. The subject is considered to be of average market condition and consist of updated interior amenities. The subject has block and link fence, metal driveway entry gate, enclosed yard and has open parking in front of the subject. There is a rear yard storage shed and a rear bonus room with a bathroom. The subject has stucco exterior finish, some dual pane windows, built-up roof and is on a sewer system. The interior currently has wood laminate flooring, the kitchens have formica and granite counters, builder grade cabinetry, and newer appliances. The bathrooms have fiber glass showers, wood laminate & tile floors. Bedrooms have wood laminate flooring, ceiling fans and drape window treatments. Both units have window A/C units, wall heat and evaporative coolers. Both units appear to be of average maintenance and condition.

All comparables reported in the appraisal report appear to be "arms length" transactions.

*SALES COMPARISON APPROACH*

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

Form GPRES2.(AC) – "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE

3/2007

# Residential appraisal summary report

File No.: 010620DHS

## COST APPROACH TO VALUE (if developed)  ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):  No Land value or cost figures were calculated
due to the inaccuracy of determining the accrued depreciation of the mature improvements. There were a few site sales that could be considered for
determining an opinion for the site value.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | .......................................................= $ | |
|---|---|---|---|
| Source of cost data:   N/A | DWELLING | Sq.Ft. @ $ | ....= $ |
| Quality rating from cost service:   N/A   Effective date of cost data:   N/A | | Sq.Ft. @ $ | ....= $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | ....= $ |
| No site value was reported. There are recent site sales that do provide | | Sq.Ft. @ $ | ....= $ |
| reasonable data for determining the site value, however no cost figures were | | Sq.Ft. @ $ | ....= $ |
| calculated due to the inaccuracy of determining the accrued depreciation of | | Sq.Ft. @ $ | ....= $ |
| the improvements due to the age and condition of the property. | Garage/Carport | Sq.Ft. @ $ | ....= $ |
| | Total Estimate of Cost-New | ..............................................= $ | |
| | Less         Physical | Functional | External |
| | Depreciation | | = $( ) |
| | Depreciated Cost of Improvements | ...........................= $ | |
| | "As-Is" Value of Site Improvements | ...........................= $ | |
| | | ...........................= $ | |
| | | ...........................= $ | |
| Estimated Remaining Economic Life (if required)   65   Years | INDICATED VALUE BY COST APPROACH | .......................= $   N/A | |

## INCOME APPROACH TO VALUE (if developed)  ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $   N/A   X Gross Rent Multiplier   N/a   = $         Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM):   N/a

## PROJECT INFORMATION FOR PUDs (if applicable)  ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:

Describe common elements and recreational facilities:

Indicated Value by: Sales Comparison Approach $   170,000   Cost Approach (if developed) $   N/A   Income Approach (if developed) $

Final Reconciliation   The cost approach wasn't considered due to the inaccuracy of determining and calculating depreciation. The income approach was not
used due to the inaccuracy of determining a gross rent multiplier in this market area. Most weight is given to the sale comparison analysis as it most nearly
reflects the actions of buyers and sellers in the open market. Due to the lower quality of construction, mature age and high level of deferred maintenance of
the subject property the final opinion was positioned toward the lower range of the adjusted market grid.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to
the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:   This appraisal report is
intended for "Administrative" purposes only and is not intended for any other use or loan.  No conditions to appraisal.

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions,
and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject
of this report is:  $   170,000   as of:   05/16/2017   , which is the effective date of this appraisal.
If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.  See attached addenda.

A true and complete copy of this report contains   21   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be
properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| ☒ Scope of work | ☒ Limiting cond./certifications | ☐ Narrative addendum | ☒ Photograph addenda | ☒ Sketch addendum |
|---|---|---|---|---|
| ☒ Map addenda | ☒ Additional sales | ☐ Cost addendum | ☐ Flood addendum | ☐ Manuf. House addendum |
| ☐ Hypothetical conditions | ☐ Extraordinary assumptions | ☐ | ☐ | ☐ |

Client Contact:   Rafael Valenzuela          Client Name:   Rafael Andres Valenzuela

E-Mail:   ralphmyrealtor@gmail.com          Address:   19526 Lurin Ave, Riverside, CA 92508-9577

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *Jeffery L. Somers* (signature) | |
| Appraiser Name:   Jeffery L Somers | Supervisory or Co-Appraiser Name: |
| Company:   Jeff Somers Appraisals, Inc | Company: |
| Phone: (760) 345-6060   Fax: (760) 345-6405 | Phone:         Fax: |
| E-Mail:   jefferysomers@dc.rr.com | E-Mail: |
| Date of Report (Signature):   01/14/2020 | Date of Report (Signature): |
| License or Certification #:   AR008376   State: CA | License or Certification #:       State: |
| Designation: | Designation: |
| Expiration Date of License or Certification:   10/17/2021 | Expiration Date of License or Certification: |
| Inspection of Subject:  ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject:  ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection:   01/06/2020 | Date of Inspection: |

GP RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE          3/2007

| Borrower | Rafael Andres Valenzuela | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | |



| Area Calculations Summary | |
|---|---|
| **Living Area** | |
| First Unit | 1464.5 Sq ft |
| Second Unit | 656.5 Sq ft |
| **Total living Area (Rounded):** | **2121 Sq ft** |
| **Non-living Area** | |
| Drive Way Slab | 540 Sq ft |
| Storage Shed | 195.5 Sq ft |
| Covered Patio | 245 Sq ft |
| Workshop/Storage | 569 Sq ft |

TOTAL Sketch by a la mode, inc.

Form SKT.BldSkI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | Rafael Andres Valenzuela | | | | | | |
| Property Address | 15160 Via Montana | | | | | | |
| City | Desert Hot Springs | County | Riverside | | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | | |



Subject
15160 Via Montana

Location Map

| Borrower | Rafael Andres Valenzuela | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | | |



Location Map

| Borrower | Rafael Andres Valenzuela | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | |



Flood Map

| Borrower | Rafael Andres Valenzuela | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | |



**InterFlood** by a la mode

Prepared for: Jeffery Somers Appraisals
15160 Via Montana
Desert Hot Springs, CA 92240

300 yards

**MAP DATA**

FEMA Special Flood Hazard Area: No
Map Number: 06065C0905G
Zone: X500
Map Date: August 28, 2008
FIPS: 06065

**MAP LEGEND**

☐ Areas inundated by 500-year flooding     ▨ Protected Areas
▨ Areas inundated by 100-year flooding     ▨ Floodway
☐ Velocity Hazard                          ◯ Subject Area

Powered by CoreLogic®

**Subject Photo Page**

| Borrower | Rafael Andres Valenzuela | | | | |
|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | |
| City | Desert Hot Springs | County | Riverside | State CA | Zip Code 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | |



### Subject Front

15160 Via Montana

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 2,121 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Suburban/Average |
| View | Resdl/Mtns |
| Site | 7,356 sf |
| Quality | Average |
| Age | 55 |



### Subject Rear



### Subject Street

Comparable Photo Page

| Borrower | Rafael Andres Valenzuela | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 16160 Via Montana | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | |



### Comparable 1

16655 Carol Dr
| | |
|---|---|
| Prox. to Subject | 1.46 miles SW |
| Sale Price | 189,000 |
| Gross Living Area | 1,848 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | Suburban/Average |
| View | Resid/Mtns |
| Site | 6,970 +/- sf |
| Quality | Average |
| Age | 44 |



### Comparable 2

66327 8th St
| | |
|---|---|
| Prox. to Subject | 2.17 miles N |
| Sale Price | 170,000 |
| Gross Living Area | 1,400 |
| Total Rooms | 8 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | Suburban/Average |
| View | Resid/Mtns |
| Site | 12,197 +/- sf |
| Quality | Average |
| Age | 67 |



### Comparable 3

11388 Ocotillo Rd
| | |
|---|---|
| Prox. to Subject | 1.92 miles N |
| Sale Price | 148,000 |
| Gross Living Area | 1,280 |
| Total Rooms | 9 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | Suburban/Average |
| View | Resid/Mtns |
| Site | 6,970 +/- sf |
| Quality | Average |
| Age | 64 |

Comparative Photo Page

| Borrower | Rafael Andres Valenzuela | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | | | |
| City | Desert Hot Springs | County | Riverside | | State | CA | Zip Code 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | | |



### Comparable 4

68360 Calle Cerrito

| | |
|---|---|
| Prox. to Subject | 1.67 miles NE |
| Sale Price | 165,000 |
| Gross Living Area | 1,437 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | Suburban/Average |
| View | Resid/Mtns |
| Site | 7,841 +/- sf |
| Quality | Average |
| Age | 57 |

### Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Photograph Addendum

| Borrower | Rafael Andres Valenzuela | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code  92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | |



Unit A.



Unit A wood laminate flooring.



Unit A Living room w/tile surround fireplace.



Living room w/built-in & drapes.



Unit A Dining area.



Kitchen floor w/tile floors.



Kitchen w/slab granite counters.



Unit A Kitchen.



Unit A Kitchen.



Laundry area.



Flooring to bedroom.



Unit A Guest bedroom w/window A/C.



Unit A Guest bedroom.



Guest bedroom w/o smoke detector.



Unit A Hallway with carbon monoxide detector.

Photograph Addendum

| Borrower | Rafael Andres Valenzuela | | | | |
|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | |



Hallway entry to bedrooms.



2nd guest Bedroom w/wood laminate flooring.



Unit A 2nd Guest bedroom.



Unit A 2nd Guest bedroom.



2nd Guest bedroom w/smoke detector.



Unit A Bathroom flooring.



Unit A Guest bathroom.



Guest bathroom.



Entry flooring to main bedroom.



Unit A Main bedroom.



Main bedroom w/mirrored closet doors.



Main bedroom w/o smoke detector.



Unit A Main bedroom w/o smoke detector.

**Photograph Addendum**

| Borrower | Rafael Andres Valenzuela | | | | |
|---|---|---|---|---|---|
| Property Address | 15160 Via Montana | | | | |
| City | Desert Hot Springs | County Riverside | | State CA | Zip Code 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | |


Unit B entry, South side view of the subject.


Unit B entry front door.


Unit B Living room w/wood laminate floors.


Unit B Living room w/wood laminate floors.


Unit B kitchen.


Unit B kitchen.


Unit B kitchen & dining area.


Unit B bathroom.


Unit B bathroom.


Unit B bedroom flooring.


Unit B bedroom.


Unit B bedroom w/smoke detector.


Unit B bedroom.


Unit B bedroom w/smoke detector.


Unit B w/carbon monoxide detector.

Form PIC15 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Photograph Addendum**

| Borrower | Rafael Andres Valenzuela | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 16160 Via Montana | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | |


South side view of the subject.


West side view of the subject.


North side view of the subject.


North side view of the subject.


South side view of the subject.


North side view of the subject from the backyd.


Water heater w/two safety straps.


Storage shed.


Two separate electrical meters.


Subject open parking area.


Street view.


Added front view of the subject.

| Borrower | Rafael Andres Valenzuela | | | | | | |
| Property Address | 15160 Via Montana | | | | | | |
| City | Desert Hot Springs | County | Riverside | State | CA | Zip Code | 92240 |
| Lender/Client | Rafael Andres Valenzuela | | | | | | |



Business, Consumer Services & Housing Agency
BUREAU OF REAL ESTATE APPRAISERS
REAL ESTATE APPRAISER LICENSE

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

**Jeffery L. Somers**

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:     AR 008376

Effective Date:     October 18, 2019
Date Expires:     October 17, 2021

Jim Martin, Bureau Chief, BREA

3049095